**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|   |   |
|---|---|
| JOHN F. GIUDICE, | : |
| | : CIVIL ACTION NO. 06-3721 (MLC) |
| Plaintiff, | : |
| | : **MEMORANDUM OPINION** |
| v. | : |
| | : |
| EMPLOYEE'S PROFIT-SHARING | : |
| PROFIT SHARING PLAN OF THE | : |
| BANK OF NEW YORK COMPANY, | : |
| INC., et al., | : |
| | : |
| Defendants. | : |

**COOPER, District Judge**

Plaintiff, John F. Giudice, commenced this action against his former employer, defendant The Bank of New York Company, Inc. (the "Bank"), and certain benefit plans provided by the Bank, alleging wrongful denial of benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § ("Section") 1001, et seq., and breach of fiduciary duty. (Dkt. entry no. 1, Compl.)[1] Defendants now move for summary judgment in their favor pursuant to Federal Rule of Civil Procedure ("Rule") 56, contending the claims are time-barred by the applicable statutes of limitations. (Dkt. entry no. 42.) Plaintiff opposes the

---

[1] The benefit plans named as defendants are the Employee's Profit-Sharing Profit Sharing Plan of the Bank of New York Company, Inc., the Employee Stock Ownership Plan of the Bank of New York Company, Inc., the Short-Term Disability Plan of the Bank of New York Company, Inc., the Supplemental Sick Pay Plan of the Bank of New York Company, Inc., and the Long Term Disability Plan of the Bank of New York Company, Inc. (See Compl.)

motion. (Dkt. entry no. 45.) An oral hearing was held on August 3, 2009. (Dkt. entry no. 47.) For the reasons stated herein, the Court will grant the motion.

### BACKGROUND

Plaintiff was an employee of the Bank from approximately February 1969 until February 1998. (Dkt. entry no. 45, Orsen Certif., Ex. B, 1-2-08 Giudice Dep. at 5-7.) Over the course of his employment, plaintiff participated in various ERISA employee benefit plans, including the Profit Sharing Plan ("pension plan"). (Id. at 18.)

Due to certain health conditions and personal situations, plaintiff explored the option of taking disability leave, as well as the ability to withdraw funds from the pension plan, in approximately February 1998. (Id. at 46-58.) Plaintiff contends he spoke with Laura Travers, a representative from the Bank's Human Resources department, and was told that he was not entitled to take disability leave and simultaneously withdraw funds from the pension plan. (Dkt. entry no. 45, Pl. Br. at 6; see Orsen Certif., Ex. B, Giudice Dep. at 48-58; Orsen Certif., Ex. C, 1-29-08 Travers Dep. at 37-38.)[2] He further contends that

---

[2] Although plaintiff names various Bank benefit plans as defendants, plaintiff contends he inquired only about the specific pension plan and receiving benefits under the Long Term Disability Plan. Plaintiff has not developed the arguments behind naming the remainder of the benefit plans as defendants. (See Compl.; see, e.g., Orsen Certif., Ex. B, Giudice Dep. at 45.)

he was told he must terminate his employment at the Bank in order to withdraw funds from the pension plan.  (Orsen Certif., Ex. B, Giudice Dept. at 48-58.)  Relying on this information, plaintiff asserts he chose not to take disability leave, but to terminate his employment with the Bank, effective February 27, 1998, in order to periodically withdraw funds from the pension plan.  (Id. at 43-58.)

Plaintiff did not have further contact with Travers until February 2005, when he contacted her, inter alia, with questions regarding the pension plan.  (Id.)[3]  Travers again told plaintiff he was not entitled to withdraw funds from the pension plan while on disability leave.  (Id.)  According to plaintiff, following the February 2005 conversation with Travers, he contacted two other Bank employees, including Travers's supervisor, both of whom confirmed the information he was given by Travers.  (Id. at 70-85.)

Plaintiff subsequently, in approximately February 2005, seven years after his resignation from the Bank, learned, by

---

[3] Following his termination, plaintiff occasionally spoke to human resource representatives and Bank colleagues regarding personal matters or benefit matters, and contacted his former manager in approximately 2002 or 2003, to "update him on his situation and to discuss changes with the bank."  (Pl. Br. at 9.)  Plaintiff did not speak to any Bank representative or employee regarding disability benefits or any alleged misinformation he had been given after his resignation until he contacted Travers again in February 2005.  (Dkt. entry no. 42, Kelly Certif, Ex. B.)

examining certain benefit plan documents, that he was entitled to withdraw funds from the pension plan while on disability leave. (Id. at 93-94; Orsen Certif., Ex. J at 2 ("If you become totally and permanently disabled, you may withdraw any and all of your balance in the [pension plan].").) Plaintiff again contacted Travers, who later confirmed he could have withdrawn funds from the pension plan while on disability leave. (Orsen Certif., Ex. B, Giudice Dep. at 94-95.) Travers contends she does not recall when she learned this information. (Orsen Certif., Ex. C, Travers Dep. at 75-76.) Plaintiff, as a result, filed the Complaint on August 9, 2006, alleging improper denial of benefits and breach of fiduciary duty. (See Compl.)

Defendants moved, in October 2006, to dismiss the Complaint on the grounds that the claims were time-barred by the applicable statutes of limitations. (Dkt. entry no. 8.) The Court denied the motion without prejudice, directing the parties to conduct limited discovery on the issue of timeliness. (Dkt. entry no. 17.) Defendants now move for summary judgment in their favor, arguing that the limited discovery has failed to uncover any genuine issues of material fact as to the untimeliness of plaintiff's claims. (Dkt. entry no. 42, Defs. Br. at 2-3.)

**DISCUSSION**

**I.   Summary Judgment Standard**

Rule 56(c) provides that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant must "set out specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e)(2).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule

56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48.  A fact is material only if it might affect the action's outcome under governing law. Id. at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

**II. Denial of Benefits Claim (Count I)**

In Count I, plaintiff seeks, under Section 1132(a)(1)(B) of ERISA, to recover disability benefits that have not been paid to date, contending the terms of certain Bank benefit plans "require the payment of disability and related sick benefits to plaintiff," and the failure to pay plaintiff such benefits was "unreasonable and arbitrary and capricious."  (Compl. at 7.) Defendants, however, argue that, under the applicable six-year statutory period, this claim is untimely.  (Defs. Br. at 5.) They contend that the claim accrued, at the latest, on February 27, 1998, when plaintiff voluntarily terminated his employment

allegedly because he was told that he was not entitled to withdraw funds from the pension plan while on disability leave. (Id. at 5-6.)  Defendants argue that, as such, the last day plaintiff was able to timely file the claim was six years from the termination date – February 27, 2004 – and, as it was not filed until August 9, 2006, the claim is now barred.  (Id. at 6.)

ERISA does not contain a statute of limitations for non-fiduciary claims, such as alleged in Count I.  The Court thus must look to the limitations period applicable in the forum state most analogous to the claim at hand.  See Romero v. Allstate Corp., 404 F.3d 212, 220 (3d Cir. 2005).  The most analogous statute of limitations for this ERISA denial of benefits claims is the New Jersey six-year statute of limitations for contract claims.  See Starr v. JCI Data Processing, 767 F.Supp. 633, 638 (D.N.J. 1991).

The principal issue for the Court is to determine when the applicable six-year statutory period accrued.  The date of accrual is a matter of federal common law.  Romero, 404 F.3d at 221.  Under the discovery rule, a claim will accrue when a plaintiff discovers, or should have with due diligence discovered, the injury that forms the basis of the claim.  Id. at 222.  In the ERISA context, the general rule is that "an ERISA non-fiduciary claim will accrue after a claim for benefits due under an ERISA plan has been made and formally denied."  Id.

7

"When there has been a repudiation of benefits by the fiduciary which is <u>clear</u> and made known to the beneficiary," however, an ERISA claim will accrue before a formal application is made or before benefits are formally denied.  Id. at 222-23 (internal quotation and citation omitted).

     Plaintiff, in essence, argues that, as a result of receiving misinformation regarding his ability to withdraw funds from the pension plan while on disability leave, he was kept from filing for disability benefits.[4]  Based on this misinformation, plaintiff contends he was coerced to terminate his employment rather than apply for disability benefits.  Plaintiff thus claims there was a clear repudiation when he was told he was not entitled to receive disability benefits and simultaneously withdraw from the pension plan.  The Court finds, because there was a clear repudiation known to plaintiff, plaintiff's claim accrued before a formal application was made or benefits were formally denied.  Plaintiff's claim accrued when he received the repudiation in February 1998 – when he was told he was not entitled to simultaneously withdraw funds from the pension plan and receive disability benefits.

---

[4] For the limited purposes of this motion, the Court will assume as true that plaintiff was orally provided, in 1998, incorrect information regarding his ability to simultaneously receive disability benefits and withdraw money from the pension plan.  The Court will further assume as true that plaintiff could have, contrary to this misinformation, simultaneously received disability benefits and withdrawn funds from the pension plan.

Plaintiff, however, contends, <u>inter</u> <u>alia</u>, that the statutory period did not accrue until he discovered, in approximately February 2005, that he was given misinformation.  (Pl. Br. at 19-20.)  Plaintiff asserts that he did not know, and could not have known, of the "improper denial of benefits," or repudiation, before this time because he was given the misinformation on multiple occasions.  (<u>Id.</u> at 21-22; <u>see</u> Compl. at 6.)

Plaintiff fails to acknowledge that the plan documents, ultimately alerting him to the misinformation, were available to him in 1998.  That plaintiff chose not to look at the plan documents, which he could have requested and examined in 1998, until 2005 does not stop the statutory period from accruing.  That plaintiff was given the same misinformation at a later date, moreover, does not change that the correct information would have been available to plaintiff in 1998 upon the exercise of due diligence.  The claim thus accrued upon awareness of the repudiation in 1998, not upon  plaintiff's realization that the injury constituted a legal wrong in 2005.  The discovery rule in

this context therefore does not serve to extend the six-year limitations period.[5]

Plaintiff, in the alternative, argues that the statutory period should be equitably tolled because he relied on the misinformation that was given to him in 1998 and 2005. (Pl. Br. at 21.) He contends, inter alia, that "the Bank knew they [sic] gave [plaintiff] the wrong information in 1998 and purposely deceived the plaintiff in 2005" for its "own gain which rises to the level of fraud." (Id. at 21-22.) The Court finds, however, that an alleged oral statement, contradicting certain plan documents available to plaintiff for inspection in both 1998 and 2005, without anything more, is not enough to activate the doctrine of equitable tolling. Plaintiff was no more prevented from learning the truth in 1998 than he was in 2005 when he read the plan documents. The Court, accordingly, finds that summary judgment should be granted in favor of the defendants as to Count I, as the claim falls outside of the statutory limitations period.

---

[5] Plaintiff further asserts that defendants' multiple misrepresentations and omissions, through failure to correct the misinformation, gave rise to a continuing breach. (Pl. Br. at 21-22.) Regardless of whether a continuing breach is recognized in the Third Circuit, the Court notes that a continuing breach is not present in these circumstances because plaintiff was given the alleged misinformation in 1998, and was not later given any additional or different information that shows a subsequent injury or change in status.

### III. Breach of Fiduciary Duty Claim (Count II)

In Count II, plaintiff contends that the Bank breached its fiduciary duties to plaintiff (1) "[b]ecause of the misinformation, omissions, fraud and/or concealment of information by the [Bank], through its agents and employees," and (2) by failing "to provide plaintiff with complete, accurate and material information." (Compl. at 7-8; dkt. entry no. 43, Stip. to Am. Compl. at 3-4.)  Defendants argue that they are entitled to summary judgment as to this Count because the claim falls outside of the applicable statutory period. (Defs. Br. at 9-14.)

ERISA, Section 1113, limits the time when an ERISA beneficiary can commence a breach of duty claim against a fiduciary, providing:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of –
>> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>>
>> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.  "This section thus creates a general six year statute of limitations, shortened to three years in cases where

11

the plaintiff has actual knowledge of the breach, and potentially extended to six years from the date of discovery in cases involving fraud or concealment." Ranke v. Sanofi-Synthelabo, 436 F.3d 197, 201 (3d Cir. 2005) (quotation and citation omitted).

### A.   Date of Last Action and Latest Date to Cure Breach

Because the Complaint was filed in August 2006, under the general six-year statute of limitations, August 2000 is the last date on which a breach could have occurred that could serve as a basis for the Complaint. Plaintiff contends, inter alia, that his claim falls within this six-year statutory period because the last actionable injury occurred in approximately February 2005, when Travers repeated the misinformation to plaintiff. (Pl. Br. at 23-24.) Defendants, to the contrary, contend that the breach of fiduciary duty claim accrued no later than the effective date of plaintiff's resignation, on February 27, 1998. (Defs. Br. at 10-11.)

Plaintiff alleges that he detrimentally relied on the alleged misinformation in 1998. (See Orsen Certif., Ex B, Giudice Dep. at 43-58.) He fails to present any allegations regarding events that occurred after February 1998 that are independent of and not a mere continuation of the initial misinformation that led him to terminate his employment and not seek disability benefits. See Ranke, 436 F.3d at 203. Plaintiff

12

may not "reset the clock" by later claiming to again detrimentally rely on the same misinformation causing his claim to first accrue. See id. The Court thus finds that the date of the last action to constitute part of the alleged breach occurred in 1998, outside of the statutory period.

Plaintiff also contends that the misinformation provided to him constituted "omissions of information," and that defendants "failed to act by not advising the plaintiff properly." (Pl. Br. at 24.) Plaintiff argues that defendants could have cured this breach "not only in or about February 1998, but in or about February 2005, or even to this day," and thus the claim does not fall outside of the statutory period. (Id. at 25.) Defendants, however, contend that ruling that the statute has yet to accrue because defendants could have cured "even to this day" would effectively eviscerate the statute of limitations and would be contrary to Congressional intent to put an adversary on notice to defend actions within a specified period of time. (Dkt. entry no. 46, Defs. Reply Br. at 10.)

The Court agrees with defendants. Plaintiff terminated his employment in 1998 and bases his claims on the misinformation he was given at the time. (See Compl.) It would be unreasonable to find that providing plaintiff with misinformation was an omission, or to hold that, under the current circumstances, an employee who voluntarily terminated his employment with a company

13

over ten years ago should have been alerted that he was given misinformation, which he could have discovered on his own had he examined the available plan documents. The benefit plans and circumstances, moreover, have changed throughout the years, including the discontinuation of certain plans offered by the Bank at the time of plaintiff's employment. (See, e.g., Orsen Certif., Ex. B, Giudice Dep. at 19 (stating various mergers, inter alia, made it "complicated" to keep up with benefit plans).) Cf. Reich v. Johnson, 891 F.Supp. 208, 209 (D.N.J. 1995) (finding action to be timely because defendants could have cured the breaches). Plaintiff has not indicated that any so-called "omission" took place after February 1998, that was of a different character than the initial misrepresentation or resulted in any additional injury or change in status with respect to the initial alleged breach. The Court, accordingly, finds that the claim in Count II is outside of the six-year statutory period provided in Section 1113(1).

**B.   Actual Knowledge**

Plaintiff also contends that he did not receive "actual knowledge" of the misinformation until February 2005, and his claim is therefore within the three-year statutory period provided in Section 1113(2). (Pl. Br. at 23-25.) The statute, however, provides that a breach of fiduciary claim is time-barred after the earlier of the general six-year period in Section

14

1113(1) or the three-year "actual knowledge" period in Section 1113(2). At the time plaintiff contends he received "actual knowledge" of the breach - in approximately February 2005 – the general six-year limitation period had already run. This provision is thus not applicable in the circumstances.

### C. Fraud or Concealment Exception

Plaintiff, furthermore, contends that the "fraud or concealment" exception is applicable, and that the six-year statute of limitations did not begin to run until after plaintiff discovered the breach in early 2005. (Id. at 25.) Plaintiff argues, inter alia, that the "representative of the Bank took affirmative steps to trick" and to "purposely deceive" plaintiff by providing him with misinformation in 1998, and again in 2005, rising to the level of fraud. (Id. at 26-27.) Plaintiff thus, in essence, argues that the "fraud or concealment" exception is applicable because he, an ERISA beneficiary, did not know that his benefits were misrepresented, but the fiduciary did. See Ranke, 436 F.3d at 203.

The federal discovery rule is applicable to the "fraud or concealment" exception: when a defendant "has taken steps to hide its breach of fiduciary duty, the limitations period will run six years after the claim's discovery." Id. at 204 (quotations and

15

citations omitted).[6]  For the "fraud or concealment" exception to apply, an ERISA fiduciary must have taken affirmative steps to hide an alleged breach of duty from a beneficiary.  Id. ("The relevant question is not whether the complaint sounds in concealment, but rather whether there is evidence that the defendant took affirmative steps to hide its breach of fiduciary duty" (quotation and citation omitted)); see In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 242 F.3d 497, 502 (3d Cir. 2001) (stating issue is whether "fiduciary took steps to hide its breach"); Kurz v. Phila. Elec. Co., 96 F.3d 1544, 1552 (3d Cir. 1996).

    The Complaint here does not contain any allegation of affirmative steps taken by defendants that prevented plaintiff from discovering the alleged breach of duty before the statute of limitations expired.  Ranke, 463 F.3d at 204; cf. In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 242 F.3d at 505 (finding that fiduciary's act of responding to questions in a manner that diverted the beneficiary from discovering a prior misrepresentation activated the "fraud or concealment" exception).  The Complaint alleges that plaintiff was given misinformation regarding his ability to withdraw funds while taking disability leave.  Plaintiff has not presented evidence to

---

    [6] The application of the discovery rule in the fiduciary context varies slightly from the application of the discovery rule in the non-fiduciary context.  See supra section II.

allege that the misinformation was given to him knowingly or deliberately in a way that was meant to deceive him. Defendants' failure to notify plaintiff of the correct plan information, available to plaintiff through the plan documents, is not in itself an affirmative step and cannot on its own bring the "fraud or concealment" exception into play.[7] As such, the Court finds that the claim in Count II is time-barred, and will grant summary judgment in defendants' favor as to this Count.[8]

### CONCLUSION

The Court, for the reasons stated <u>supra</u>, will grant the motion. The Court will issue an appropriate Order and Judgment.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:   August 25, 2009

---

[7] Plaintiff also contends that defendants concealed and omitted information by failing to properly distribute copies of the plan documents and provide plaintiff's counsel with a copy of his personnel file upon request. (Kelly Certif., Ex. B at 5.) The Court does not find that these allegations rise to the level of affirmative steps to hide a breach of fiduciary duty. Plaintiff has not demonstrated that the plan documents were unavailable to him upon request. Plaintiff and his counsel, moreover, do not appear to have requested the personnel file during the applicable statutory period.

[8] The Court does not discuss the doctrine of equitable tolling within the context of non-fiduciary claim as it finds that Section 1113 embodies the principles of the doctrine.